The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff and good afternoon, counsel. Afternoon. Good afternoon. This case is our case number 423-0707. People in the state of Illinois versus Timothy W. Bliefnick. I ask counsel for the appellant, please state your name. James Waller. Thank you. And counsel for the appellee, please state your name. First name, Allison Page, last name Brooks. Thank you. Okay, then Mr. Waller, on behalf of the defendant, you may begin your argument of this one. Thank you. May I please court, counsel? My name is James Waller. I work for the Appellate Defender's Office. It is my pleasure to represent Tim Bliefnick before you today. Tim is asking for this court to order a new trial for three reasons. The first, he was denied a fair trial when the circuit court admitted a massive amount of evidence that was irrelevant or not otherwise admissible under the forfeiture by wrongdoing doctrine. Second, Tim was denied a fair trial when the prosecutor was allowed to make representations to the jury during rebuttal argument that were not admitted into evidence or subject to cross-examination. I intend to largely stand on the arguments in the briefs on that issue, but I'm happy to answer any questions. Finally, the third issue, a case this important should be tried before a judge whose career is not resting in the hands of the prosecutor trying the case. Now, as unfortunate as the last two issues are, and although they are independent grounds for remand, this court doesn't even need to reach those because the first issue is so straightforward. Tim Bliefnick was denied his right to a fair trial when the court admitted a vast amount of inadmissible evidence under the forfeiture by wrongdoing doctrine without regard for whether that evidence was relevant or otherwise admissible. We don't argue on appeal that the court should not have applied the doctrine of forfeiture by wrongdoing. We stipulate the statement as burden to allow some information in, but where the court did err, and in a way that denied Tim a fair trial, was in allowing a vast amount of irrelevant and not otherwise admissible fears, thoughts, feelings, and possibly privileged communications. Hearsay statements about Becky's state of mind were not. Before I want to give you a chance to address this, but I want to talk about some of the other matters as well. One of them is concerns Judge Adrian presiding over this case. Is my understanding correct that at trial, the objections or concerns the defendant raised were with regard to the prosecutor, Joshua Jones? Yes, Your Honor, the trial counsel filed a suggestion of conflict. The prayer for relief was to ask that Mr. Jones be disqualified as prosecutor. We argue that that fully brought the issue to the court's attention issue that absolutely should have been at the forefront of the court's mind. But that brought the issue to the court's attention, and we believe that that should have put the court on notice that. It's to a sponte or even at the request of the defendant's recusal was absolutely mandatory at that point. I'm happy to please. Well, was at the trial level, the defendant raised any question about Judge Adrian presiding is the trial judge in this case. Not beyond that suggestion of conflict that I mentioned, not that I'm aware of. Okay. The other thing is I want to ask you about. The closing argument is an aspect of that I want to get into as well.  And that is. At trial during the closing argument. Defense counsel argued regarding the various searches that the state talked about that. The defendant had conducted for sure it was on his equipment. If these searches took place after Becky's death, then the searchers should indicate that it's nothing more than the defendant looking into the investigation. I have found it and following the investigation as the news allowed us to follow the evidence. Was there anything in the record in this case about. What news reports existed concerning the evidence in this case, or the circumstances surrounding Becky's death? Nothing, nothing in the record by either side ever demonstrated what was released to the to the public or not. We know I'm sorry. Well, I'm saying. Isn't this argument following the investigation is news allowed us to follow the evidence isn't that suggesting that to the jury that. There was evidence released that was in the news that the jury could consider and think about and that would account for why the defendant might have been pursuing the inquiries he did. Your Honor, I don't think it's anywhere nearly as strong as suggesting to the jury. That's not my question. Counsel wasn't isn't as strong. My question is, is it in fact true that there was nothing in the news or in the evidence to talk about the news at all from defense counsel? There was nothing in the in the record. That's correct. So your position is. Even though there's nothing in the record, the state's argument was even worse. My position is that's not quite my position. Your Honor, my position is that defense counsel was providing possible explanations based on the evidence that the state provided and did not make. I don't think that defense counsel made an affirmative declaration of what was in the record or what was in the news and what wasn't. They were just saying these were possible interpretations of the evidence. The state went far beyond what defense counsel did and said, not only did we not release these five or six pieces of information, but the defense people have been complaining about it. You know, suggesting that not only was it not released, but the defense was unhappy about the fact that it wasn't released. So that is a step further. That is a larger and and and that would be grounds for new trial. That was actually testimony. You may go on back to where you were. Thank you, Your Honor. As I was saying, the hearsay statements about Becky's state of mind were not relevant. The court in Zimmerman, and this court in Zimmerman rather, and the Supreme Court in Floyd recognized this as explicit black letter law. The Supreme Court called it reversible error on its own. The inadmissible testimony came from Nicole Bateman, Rebecca Spotts, Sarah Riley, Sarah Murphy, and Christine Moore. All of them testified to hearsay statements about Becky's state of mind and the prosecution's explicit reason to admit their testimony was to show her fear, her state of mind in fearing Tim. We know from Floyd that this state of mind of the decedent in fearing for their safety. I'm sorry. Oh, I apologize. We know that this is irrelevant to prove anything but propensity to commit a crime, unless it's not proper evidence to admit under the forfeiture by wrongdoing principle. We also know from Floyd that a single instance of this is reversible error if properly preserved as it was in this case. In Zimmerman, this court applied that black letter law to specific statements like if anything ever happened to her, the defendant did it. Now, we've got Nicole Bateman saying he'll be angry, he'll do whatever he feels like doing. What else is he willing to do? The state says that's to show her state of mind. The defense objects. Rebecca Spotts, I fear he'll take off with the kids. He'll punish me somehow explicitly to show her state of mind. The defense objects under relevance. Sarah Riley, if anything ever happens to me, make sure the person of interest is Tim. Sarah Murphy, if anything happens to me, make sure to look at Tim. This is language identical to what was in Zimmerman. And the state was explicitly saying that it was to show her state of mind. Defense gave a continuing objection. Renewal is recognized by the court at trial. Christine Moore, the only way to choose me is to eliminate or choose him is to eliminate me as a choice. That was elicited for a state of mind, a fear of the defendant, and objected to as to relevance and foundation. The state didn't respond to most of these statements. They talked a little bit about more statements, but only the statements that we explicitly disclaimed as being part of our claim on appeal. But even if that forfeiture is non-binding on this court, admission of these statements was reversible error. It was objected to pretrial, contemporaneously at trial, and in the post-trial motion. I have a question. Some of the statements that you say were improperly admitted were statements or testimony, statements of Becky testified to by her lawyers. Is that correct? Some were, yes. The ones I've been mentioning were friends and family, but yes. Okay. Well, the reason I ask that is, leaving aside for the moment the admissibility and primitive value of the testimony of the lawyers regarding statements that their client Becky had made, are you arguing that the defendant can assert Becky's attorney-client privilege in this proceeding? In this particular type of circumstance, we are, Your Honor. I understand there's case law saying that defense counsel doesn't have standing in certain circumstances. We've seen that with a child's mental health therapist or co-defendant statements. You can't exercise that right on behalf of those people. Isn't it a strange posture for the defendant to be in where he's charged with Becky's murder to be asserting an attorney-client privilege on her behalf to keep a jury in his murder trial from hearing testimony, which, let's assume for the moment, might be probative? Your Honor, it's no more strange than anything else that comes under the forfeiture by wrongdoing. We have this carve-out for exactly this type of situation, but that carve-out has limits that Your Honor has specified in other cases. It has to be relevant and otherwise admissible. There has not been a carve-out to say otherwise admissible or privileged. Just focusing on the attorney-client privilege, what policy is served and why does it make good sense to permit a person charged with the murder, in this case of Becky, to assert her attorney-client privilege to keep the jury from hearing evidence, which, let's assume for purposes of my question, might be probative in showing that he, in fact, killed her? Do you suppose that's something that, were she alive, she'd say, I don't want my lawyer to be able to testify to this? Certainly, Your Honor. The way I would answer that question, what is the policy, you asked what the policy would be serving, would be, first of all, the sank or sank nature of attorney-client privilege. There are many circumstances where things would be probative, would be important if we allowed them to break that privilege or many other privileges. We don't. We hold that as a sacred privilege that only she. Now, I could see a policy that would allow a personal representative of her to go through those divorce files and take out anything that they don't want law enforcement or the public to see in open court. And then it could be turned over. Then you have somebody waiving that privilege on her behalf. So it's not necessarily a full impediment to law enforcement or investigation if the policy or if this court, Supreme Court, establishes a rule that says, in these circumstances, a personal representative can break through the otherwise permanent privilege. They can waive that privilege. Or if the legislature were to expand, were to limit privilege in that way. But as the law stands now, they didn't even try to do that. The bigger problem with this case, Your Honor, is that nobody even analyzed it. When two divorce attorneys come in and say, we want to turn over our multi-box file to law enforcement and open court and everybody under the sky, but those killjoys of the ARDC want the judge to sign off on it first, then the judge needed to. First of all, the state had a burden to demonstrate that either conversations were not privileged or the court had a duty to recognize that privilege might apply. Has anybody waived it? What's privileged and what isn't? The court didn't do any of that. The court signed off on it. Now, defense counsel, we say from a policy standpoint, defense counsel is uniquely positioned to be the only person in this situation to recognize that. And so somebody needs to be able to provide a remedy to go along with this right. Also, Ms. Bruxton, her brief argues that if we were to agree with you regarding the trial court committing error by admitting some of the evidence that you've earlier referred to, that it nonetheless would be harmless error because the evidence of the defendant's guilt is so compelling and overwhelming, even though it's all circumstantial evidence. First of all, with the standard review here, whether it's harmless error, would that be the appropriate standard to consider? Your Honor, in a situation like this, the Supreme Court has not applied harmless error. They call it reversible error full stop. In the dissent in Floyd, one justice said, gosh, I would apply harmless error. The Supreme Court, so was aware, like it wasn't that they didn't think about it. The Supreme Court did no analysis of exculpatory inculpatory evidence and did not apply harmless error. They said it's reversible error when this happens and it's preserved. Now, if if this court and frankly, if if if if harmless error should be applied and that's an issue, the state needs to take up with the Supreme Court on appeal as the law stands right now. This is reversible error if properly preserved, which defense counsel did a great job of doing. So I'm not sure which. Which is is the error that constitutes reversible error without a harmless error analysis. But when admission of state of mind evidence by the decedent that's irrelevant and shown only for propensity is is beyond harmless error under Floyd. The Supreme Court in Floyd did not apply harmless error. They found it reversible. It preserved period. And the dissent in there said we should apply harmless error. And the Supreme Court chose not to. Every other justice on Supreme Court's did not apply harmless error to this analysis. Now, if harmless error needs to is applied, we would argue that this is a constitutional issue. It has to do with confrontation. We're talking about narrowly narrow exceptions to hearsay and everything else have to be strictly construed against the government. So in this case, we would say the state needs to prove it's harmless beyond a reasonable doubt. It's not a constitutional issue. You conceded that the forfeiture by wrongdoing doctrine applies. That would be the confrontation clause issue. Once it applies, then we're dealing with a question of the admissibility. And in fact, the objection defendant raised the trial is it's not relevant. Not evidence matters. That's the common issue. And whether or not a trial court erred by deeming something relevant when it shouldn't have been is subject to the harmless error analysis, isn't it? That would be yes. But Your Honor, I disagree with you about whether we leave the constitutional realm once it applies. Because forfeiture by wrongdoing only applies when the evidence is relevant and otherwise admissible. In order to get us into that realm where we're just talking about abuse of discretion, evidentiary rulings, the evidence has to be relevant and otherwise admissible. We don't even get past that gate here. So we're still talking about confrontation clause constitutional rights. And again, these have to be narrowly construed. They're in derogation of the common law and the Sixth Amendment here. So to me, there's a two step process forfeiture by wrongdoing statute. If a doctrine, if it applies, that's no longer a confrontation clause issue. And you're right that statements admitted under the forfeiture by wrongdoing doctrine must be relevant. But that's not a constitutional question. That's just the normal evidentiary question. Your Honor, if this court does apply harmless, harmless error, we are talking about harmless beyond a reasonable doubt. I still I still say because I think it is constitutional in any under any and any formulation of harmless error analysis. We're looking at a case with with no fingerprint analysis, no conclusive DNA analysis, circumstantial evidence, no doubt, substantial amount. But any evidence of motive is completely specious without this improperly admitted evidence. It's very, very thin. And we also have a case where the jury, again, deliberated for almost five hours, had several questions about the identity and the clarity of the people in the videos. This was far from a no brainer. So I argue harmless. The Supreme Court states harmless. Applying harmless error would be a step. Supreme Court is not already provided for. If we're talking about harmless error, it should be constitutional, should be beyond a reasonable doubt. But under any measurement, we're still talking about a circumstantial case without a good motive and without strong identification. Of the assailant. So for these reasons, again, this we saw you. It is reversible error on its own. We ask for a new trial to move to the third issue. Briefly, excuse me for my notes here. This case should not have been tried while Mr. Jones was. Judge Adrian should not have presided over this case while Mr. Jones was prosecuting the case, while his testimony against him was pending before the GIB. This case is one of the collateral consequences of some bad decisions that Judge Adrian made. This case is this consequence is the reason we have the rules that Judge Adrian was found to have violated and why he was sanctioned the way he was sanctioned. The court's familiar with the facts of the cases, so I won't belabor them, except to say that in the triggering case, Judge Adrian walked in and told Mr. Jones, I can't be fair to you. Then, when the circumstances resulted in a formal complaint with the GIB and the GIB docketing the case for official proceedings, this case came along. The entirety of this case is very narrowly bookended by the commencement of formal GIB proceedings by Mr. Jones on the one side and Mr. Jones's testimony against Judge Adrian on the other side. Throughout the entirety of these proceedings, Judge Adrian knows in a few months he's going to have to overcome the idea that he can't be fair to Mr. Jones, which gives rise to a very reasonable perception. He's going to try to curry favor with Mr. Jones. That perception becomes a lot more reasonable when the judge violates black letter evidentiary law without exercising discretion over and over again in the state's favor. In other circumstances, I would never dream of suggesting that evidentiary rulings were driven by nefarious purposes. But look at the way Judge Adrian buried any mention of the GIB case, sealing everything the minute the issue was raised and keeping the filing away from the press. As this court is aware, the press intervened to reverse the sealing and Judge Adrian continued and continued that case until the resulting appeal of that wrong decision was found moot by this court. As we mentioned in the brief, this is not the way you're supposed to alleviate public perception of bias by hiding the evidence from the public. When a judge tells you can't be fair and take steps to hide the issue to keep it from the press and public, we're in a where there's this much smoke, there's a fire kind of situation. This court doesn't need to fashion a blanket rule for sua sponte recusal. But here, where it has been brought to the court's attention, the court is absolutely aware that GIB proceedings have just been initiated and that the testimony is going to come after the case. The court had a duty under Caperton v. A.T. Massey-Cole to recuse themselves. It's not a difficult case for recusal. Any reasonable judge would have known that a case should be handled by someone else once the GIB case was docketed. Why wasn't a motion for substitution of judge filed if this information was known at the beginning of the case? I don't know. But what matters is that the issue was brought to the judge's attention. The judge had all the information to make a reasonable decision. The judge elected not to do so. The issue that was brought was that the prosecutor should be substituted. That's right. The prayer for relief, I don't think, was necessarily appropriate in that request. But certainly the issue was put before the court. And the court, at that point, had a duty to recuse itself. So this court committed... That's not what was sought. I'm sorry, Your Honor? That's not what was sought. The court recused. He said he wanted the prosecutor balanced. That's right. And if I may continue, I see that I'm out of time, Your Honor. That's not the prayer for relief that was sought. I agree. But what remains true is that the court had a duty to recuse once it was officially brought to the court's attention. Well, not just the prayer for relief. That's what the caption of the motion is. Well, it says suggestion of conflict, I believe, was the title. Right. And then he says that the conflict is the prosecutor. That's all correct, Your Honor. Again, my position is that the judge had a duty at that point to recuse himself. Thank you, counsel. Your time is up. You'll have an opportunity to address this again in rebuttal. Thank you. You may proceed with your argument. Thank you. Your Honor. May I please the court and counsel? The state does agree that that despite the forfeiture by wrongdoing exception applying the requirement of evidence that has to be relevant and otherwise admissible is also required. But the defendant sites a very distinguishable case, the Floyd case, and that deals with a separate hearsay exception, the state of mind exception. Under the state of mind exception, evidence has to be relevant to the declared state of mind because it's not substantively admissible for its truth of the content of the statement. And the state's brief sites many pages of cases and argument to show the distinction between how the state of mind exception operates. And when something is substantively admissible for its truth under the forfeiture by wrongdoing exception. So here is about this. In this case repeatedly with regard to various matters of evidence that the state sought to offer pursuant to the forfeiture by wrongdoing doctrine. The prosecutor justified it and raised his role saying, judge, this goes to the decedent's state of mind. And the judge said, okay. As if, this is my question, that answered the question. Where and how did this notion arrive? How did the prosecutor think that because it might go to the declarant's state of mind, the decedent, Becky's, state of mind was relevant? What part of the proceedings were her state of mind relevant to? Well, the state does not accept the prosecutor's argument as being correct It's too bad you weren't there at the trial level, Ms. Brooks. That's actually true. But my point is, thank you, Your Honor. But the point is, this court reviews the judgment and not the trial court's reasoning and can affirm on any basis supported by the record. And because it is admitted for its truth, its relevance is to the defendant's motive and opportunity because of the content of the statements, not because In other words, the declarant says, the defendant did not return my gun. Her state of mind is not relevant. It's the fact, the substantive fact, the content of the statement that the defendant did not return my gun, and therefore he had the gun, and therefore that's an opportunity to commit the crime with that gun. So that's the relevance. You nicely point out in your brief that there are some of these statements the state sought to admit that notwithstanding the state's claim that it might in fact be admissible for some other reasons. And I think once or twice the court might even have referred to that. And, you know, setting those aside for the moment and addressing whether or not that could be a correct interpretation or correct ruling, what about all the rest of this stuff? I mean, there were so many of these statements, like she felt threatened a year and a half, two years before, and it goes through her state of mind. And, you know, like you, I've been at this a long time, and I don't understand where this notion that the declarant, the seated state of mind is relevant comes in. And as you recall from reading the arguments, the record, it seemed to be that that's all the prosecutor thought was necessary. The judge seemed to buy it. What's that all about, Ms. Brooks? Well, to the extent that that was incorrect, obviously the state relies most heavily on the harmless error analysis. So the defendant does a good job of pointing out a lot of this evidence, and some of this the state admits is not relevant for state of mind. But the Zimmerman case is distinguishable because in Zimmerman the victim's generalized fear without further context was unclear whether it related to a some of the facts were that Becky changed her locks. Well, if that's admitted substantively, then the defendant knows that the locks have been changed, and therefore he has to research on the Internet how to bar open a door or a window. And then it turns out in this case a window was opened. So he's not just preparing, or he's not just, you know, investigating the investigation in the Internet. He's researching how to open windows and doors. And so, I mean, the idea is that this is evidence that is admissible for things like opportunity and motive. There is a clear connection, and that's why it's relevant and that Zimmerman does not apply. And also Zimmerman is distinguishable because in that case the trial court ruling went the other way, and there was the standard review of abuse of  So to the extent that a lot of this stuff comes in, the fact that some of it is harmless and it doesn't have to be beyond a reasonable doubt because the Sixth Amendment confrontation issue went away once the defendant admits forfeiture by wrongdoing applies. The standard under Nevitt for admission of hearsay evidence, it's not beyond a reasonable doubt. It's there has to be no reasonable probability that the jury would have acquitted absent these statements. And in such a case here, we're starting with just a match of the shell casings from the scene. The defendant using all these bags to try to catch. He did, in fact, catch somebody. She shot 14 times, but they still have, I think, was around six to eight shell casings at the scene that match the shell casings, like 27 of them that were fired off in the defendant's own home. So that's the most powerful piece of circumstantial evidence that I understand and correct that it's your position that even if the trial court was prepared by letting in some of these earlier statements of Becky's under the forfeiture by wrongdoing doctrine, that the evidence in this case was so compelling and strong that it would be a harmless error? Yes. And that this court does not need to go through every single piece of evidence to identify whether, I mean, a lot of them are clearly relevant to motive and opportunity and intent. So the rest of them, if they're not, they're cumulative. And it just doesn't really – this court doesn't need to go through every single one when it's so obviously harmless. Are you applying questions with Mr. Waller about would harmless error apply? And he says a harmless error analysis would require that the state bear the burden of proving that it would be harmless beyond a reasonable doubt. Is he correct in that? No, because of the Nevitt standard. I mean, we're dealing with admission of hearsay evidence here, so the Nevitt standard is not beyond a reasonable doubt. It's no reasonable probability the jury would have acquitted absent a statement. That's the standard for Nevitt and admission of hearsay. And also, I think the defense argument might have been that the harmless error cannot apply, I think, citing the Floyd case. But even for constitutional confrontation issues, harmless error can apply. And so it just doesn't seem to make any sense that a nonconstitutional could not be harmless. Whether the evidence was actually overwhelming or the error was harmless in Floyd, it doesn't seem to be really presented there. But it is presented here. And so that's why I think this court should start the analysis of whether any error would have been harmless. And it wouldn't be necessary. They also asked Mr. Waller about the closing argument. And it seemed to me that even if it's true that defense counsel was drawing arguing inferences to a jury based on no evidence that was presented at all, namely what was released to the public about the police investigation of this case, that the prosecutor took that one step beyond as far as not just arguing inferences but making factual assertions about what wasn't in the news. How can that be viewed as permissible, Ms. Brooks? Well, the prosecutor's arguments themselves were not proper in the sense that they were supported by evidence in the record, but they were invited by the defense argument. Now, the defense does have actual assertions in its argument that the defendant was allowed to follow the investigation in the news. And so I think that's why it's an actual affirmative assertion of what the defendant was able to do. In other words, the defense argument is these searches represent what the defendant was allowed to investigate along with everyone else in town based on what was on the news. So that's an affirmative assertion of what was in the news. The response by the prosecutor would have been appropriate to say, ladies and gentlemen, that argument the defense attorney made was based on nothing. There's nothing in this record. You heard no evidence at all about what was in the news about this case, and you should disregard it. The defense attorney is arguing to you things that are based on nothing. Wouldn't that have sufficed? It would have been possible and appropriate to do, but the state's allowed to fight fire with fire. That's what the invited error allows. If the defendant injects this sort of error, the prosecutor essentially gets to respond in kind. And this was nothing more than simply a response in kind. And the defendant is not persuading that this was somehow much more egregious than what the defense already did. The defense made assertions about what he was allowed to investigate in the news and that his searches represented that. And the prosecutor was allowed to respond that this type of information was not even released. This issue essentially overlooks two important qualifications. First of all, one of the searches was dated October 2022. That's the PVC pipe silencer, improvised silencer. That was actually dated before the murder. So at least one of these searches was in fact preparatory because it was before the murder, not an investigation after the fact. And so the other issues, some of this stuff like matching shotgun shells, the shotgun wasn't used. This is like a nine millimeter handgun. The breaking open a door or something. Here a window was used, not a door. So there's several things in there, these searches that were prepped. Oh, police response time. That was the good one. Here, and this is kind of interesting too, the fact that the defendant was, I guess, hoping or expecting that the police would somehow show up within minutes after the shooting. But when the body's not found the next day and the kids go to school, because he had the kids because she had a surgery and still recovering. And then she was going to pick up the kids the next day, except she's dead. No one knows that except him. So he's bringing over toys to the grandfather's house, which I think was accused of some sort of sexual misconduct. And therefore she didn't, Becky did not want the kids around him, but he's bringing toys over, even though the kids haven't been seen over there in a while. And this has all happened in the morning. Only defendant knows she's dead. And then he calls the school, says, don't let them walk home. Shows up an hour before to make sure he gets them. Now remember Becky was supposed to get them that day, but he knows she's not getting them because she's dead because he killed her. And then he lies to the mom of Becky's mom and says that, Oh, the school called me and told me to come get them because Becky hadn't shown up. Well, obviously he doesn't want the children to walk home short distance from their school to the house in Kentucky road and find their, their, their mom dead. And so he then calls Becky's dad and then he's the one who sees it. And, and, and so that, I mean, that's just like a situation where if he's investigating after the fact, why is he looking up the average response time of Quincy police? That just doesn't make any sense when this wasn't even found the night of the shooting. So that's just like one of those things that is obviously preparatory and it's not. So, I mean, the argument, this was somehow preparatory. So this whole issue didn't even need to really be resolved on what was in the news. Just the content and searches themselves showed that these were preparatory. Most of them were. And in fact, one was dated before the murder. With respect to the privilege. Not only is the Senate have to show for ineffective assistance claim that he had standing. Which an attorney competent attorney would know all the cases, the state sites in the brief is presumed to know. The state's sites out of state authorities, obviously admittedly, but. They show that a third party stranger doesn't have standing. So his, his attorney would have known that, presumed to have known that also they have to show that. These statements were not confidential. There tended to be disclosed and like some of these were like. Negotiations. Well, obviously she says. Get me my gun back. Well, The attorney is going to have to go say, Hey, Becky says to the other side. She doesn't have her gun back. She wants it back. Well, how is that confidential? Because she's wanting the attorneys to. Disclose that and get her gun back. So some of these statements to the attorneys were not even confidential. I don't even know if the defendants establish which ones are. But the defendant has a burden of showing ineffective assistance. So that's an important point to make there as well. And with respect to. I'm really not going to, I mean, my brief is very thorough about the, the overwhelming evidence. Obviously the defendant disabling his loop fitness tracker during exact times. The person is shown on the bicycle. Under surveillance camera and shown in the. The driveway, the neighbor's camera. The fact that the 1st day on the 14th, February 14th, he went back. When he turned his fitness tracker on, he immediately. Searched on. And he made searches related to the Paramore's. Driver's license tag and VIN number. I mean, he can only seen that. But being behind her house that night. So, I mean, it's, it's obvious this was a defendant. And so when there's another trip on the day of the murder, the night of the murder. And she's trying to call nine one one and miss styles. So we know when the murder was. And he's got his fitness tracker disabled and there's a trip to and from. In the direction of his house towards her house and back to his house. And so, I mean, this is like, I don't really need to cite the entire case. As far as overwhelming circumstantial cases. This is perhaps one of the most I've ever seen. That's. Purely circumstantial admittedly, but extremely overwhelming. With respect to the allegation of judicial bias. Defendants request essentially is for a reversal. For the judge's failure to recuse. Well, the cases say that failure to recuse is not. Even error. It's not reviewable. Standard would have to be actual prejudice and how it would have to be made in a motion to substitute judge. Now, the defendant also relies though on the Caperton. The constitutional standard due process standard, which Caperton. Admits is like, is a rare situation. And this is like where an attorney, for example. Makes extremely. Content contemptuous remarks to a judge. And then that judge is going to hear the contempt case. Well, in that case, due process says, well. If what the defendant or if what that accused attorney who's contemptuous said to the judge is so extremely bad. Then as a matter of due process, we presume that essentially that the judge can't be fair in hearing that contempt case. That's essentially the line of authority. Defendants relying on extremely rare situations. In fact, sometimes. A person, an attorney can be so contemptuous. And say very critical things about a judge in a contemptuous way about the judge's ruling. But due process, like the under case. Would not mandate recusal that judge from hearing the contempt case. So, I mean, it has to be extremely bad and this is not anywhere near that. And in fact, the defendants argument, I think, is that when judge Adrian admitted. That he can't be fair and not sure exactly what's in this record in terms of what the, a lot of what the defense is citing. I'm sure what's in the actual record on appeal. But even if judge Adrian admitted, he can't be fair. This is the exact opposite of his opinion that somehow the judge Adrian is making. Favorable rulings in favor of the state in this particular prosecutor, Joshua Jones. Because he's afraid that somehow Joshua Jones is going to give him a bad testimony or wants him to give better testimony. Judicial inquiry board hearing. I mean, this is the exact opposite of what judge Adrian supposedly said, but he can't be fair to Joshua Jones. That would mean like, I'm going to rule against you every single time. Not I'm going to rule in your favor every single time. That's the exact opposite. So it just doesn't seem like even if this was somehow reviewable or could possibly be error. It doesn't anywhere meet the standard of actual. Prejudice under the. The standards for. Substitution judge. So, of course, there was no actual motion made for substitution of judge, which went assigned to a different judge, but that didn't happen here. And the constitutional due process standard hasn't even been close to being met. So for those reasons, the state would request this court to affirm the conviction sentence. Thank you, Mr. Brooks. Mr. Rollin may have a defendant. Thank you, your honor. On the question of whether this court can, whether the state can change this theory of admissibility or whether this court can affirm on any basis, this court. Counsel is pointing to statements. We don't even complain about that are not even at issue here. You can't point to a piece of properly admitted evidence to say, this is why this piece of, of, of improperly admitted evidence should be affirmed or should have been granted. That doesn't make any sense. It's a non sequitur to our claim pointing out that they changed her locks. We don't complain about that. We don't complain about the specific actions. We complain about the generalized fear, which is character and propensity evidence. So we have all these rules against admitting. As far as whether it was the biggest problem is that again, there was no discretion applied. Even if we are talking about an abuse of discretion standard. And again, our position is that that would be a test that the Supreme court doesn't provide for. We would be adding a new test here. But if we do that under the abuse of discretion, there was, we've got that that's demonstrated. There was no discretion when, when we know that state of mind of the decedent is not, is not relevant. The court says state of mind, good enough. That accomplishes relevance. That's the exact definition of an abuse of discretion. So let me ask you about. The question about harmless hair. I know you're very familiar with the facts because like Ms. Brooks, you both wrote some very fine briefs in this case. And I thank you both for that. That was always a help to this court when the attorneys write good briefs and you have, so I know you're very familiar with the facts. And just for the moment, leaving aside some of the other circumstantial evidence that this record contains, just dealing with the defendant's behavior on the day of the murder. What possible explanation can you come up with for how he behaved and what he did and what he said and what he lied about with regard to the school, for instance, that would be less incriminating than it appears to be anyway. It is. And that's the circumstantial evidence appears to be pretty much overwhelming. But I want to hear you give me your best effort to come up with some innocent explanation for how that his behavior in the day of the murders, the day of the murder could work. Your Honor, it's not, it's not, it's not our burden to demonstrate theories of innocence here. I know it's not your burden counsel, but I'm asking you anyway. I, I, I, I'm, I'm sorry, Your Honor. I'm going to refuse to, to come up with theories that the burden is on the state. And I mean, I'm going to stick to that. I had to come up with theories about his, his behavior on the day of the murder. A lot of things happen. A lot of things happen in parenting. It's very easy to look in hindsight and draw a narrative and, and connect the dots. One of the reasons it seems so overwhelming to us is that we've been exposed to all of this inadmissible character propensity evidence. You take all of that away and the jury. Counsel, I'm looking at his behavior that day. Why did he lie to the school? Why did he lie about the school? Why did he go and early on, never having done this before? I mean, if there's some conceivable, innocent explanation for this behavior, I'd be anxious to hear it. I can come up with none. Maybe you can't. This is why we need a new trial, Your Honor, because this trial was not conducted fairly. And this, you know, if this evidence needs to come up to it and to affect the state's burden of proving him beyond a reasonable doubt, that means needs to be submitted to trial. I don't think it would be proper for me to talk about the state, argue about things, not in evidence, and then sit here and guess and imagine what evidence, by the way, was subject to any claim that it was improperly admitted. None of the evidence regarding to the day of the murder. So that shouldn't give you any difficulty. Well, Your Honor, again, it's easy to look in the past and draw a narrative based on what we know today. The jury certainly didn't find it to be that easy to decide. They wanted to review, you know, video evidence of the bicycle rider. They wanted to review video evidence of the person when Tim, when they arrested, they didn't find the issue of his identity to be that easy to resolve. And once you take away all this inappropriate evidence, the question then we're talking about a reasonable chance of acquittal. So again, I don't think it would be proper for me to come up with other theories. That's the trial court is for. We want this case tried before a judge who's not indebted to showing overwhelming deference to the prosecutor. And we want this case tried without all of that irrelevant evidence. So we're asking for a new trial. Thank you very much. Well, thank you, counsel. And again, I want to thank Ms. Brooks and Mr. Waller. You both did a very nice job in your briefs in this case. It's a complicated case and it's a real assistance to this court. Doesn't happen as often as I'd like it to happen. So that's why I want to make a point of thanking you both. So with that then, the court will take this matter under advisement and do course for the decision. And we'll stand in recess.